## Laverty *v.* Harrisburg Rolling Mill Company.

*Master and servant—Wrongful dismissal—Negligence in performance of work.*

In an action by a puddler against his employer, a rolling mill company, to recover wages after he had been dismissed for alleged negligence in heating a " scrap ball " in the puddling furnace, a verdict and judgment for plaintiff will be sustained where it appears that there was no negligence on the part of the plaintiff in placing the scrap ball in the furnace, and that while it was in the furnace he was excused from work on account of sickness by the defendant's authorized agent, and that he left the mill and did not return until after the scrap ball had been heated, and had been taken out of the furnace.

Argued March 13, 1901.    Appeal, No. 19, March T., 1901, by defendant, from judgment of C. P. Dauphin Co., June T., 1900, No. 391, on verdict for plaintiff in case of Joseph M. Laverty v. Harrisburg Rolling Mill Company.    Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Assumpsit for wages.    Before WEISS, J.

At the trial it appeared that on March 12, 1900, plaintiff, together with Robert White, were working in the employment of defendant as puddlers.    Defendant claimed that plaintiff had been negligent in heating a scrap ball, which negligence had resulted in injury to machinery.    There was some evidence that plaintiff had put the scrap ball into the furnace in violation of orders.    It appeared that after he had placed the scrap ball in the furnace he requested leave to stop work on account of sickness, and this leave was given to him by the night boss. He quit work and did not return until after the scrap ball had been taken from the furnace, and caused the injuries to the machinery of which the defendant complained.

The court charged in part as follows :

You will inquire whether such an order was given to him, and you will consider all the testimony that was given on that subject; whether such order was given to him in respect to the placing of this scrap ball into this furnace ; whether an order

or directions were put on the blackboard, which came to his knowledge, or whether he had verbal orders from the boss not to put this scrap ball into that furnace. If he disobeyed that order and it resulted in no damage to the defendant, he is not responsible, because the responsibility attaches to the result as a consequence of his disobedience to the orders of the boss, if he did disobey. Could he, Laverty, anticipate that this breakdown to the machinery would be the natural consequence of his placing this ball into the furnace? If it was, if he could so anticipate it, then blame attaches to his conduct and the company has a right to make this defense. If he could not anticipate that the placing of that ball in the furnace would bring about the breakdown to the housing and the rolls, or if his conduct in placing that scrap ball in the furnace did not as a natural consequence produce the injury, then he is not liable. If he could anticipate it, and he did not bring a reasonable amount of skill in the discharge of his duty, and if it did produce the injury complained of, then he is liable; otherwise he may not be. You will consider how that was. Consider whether the injury and breakdown to the machinery was the natural consequence of his placing this scrap ball into the furnace, in disobedience of the orders of the person who had charge of the puddlers; or was there any intervening cause to which he did not contribute or for which he was not responsible that brought about and caused this injury. If there was any cause between the placing of this ball into the furnace and the happening of the injury to which he did not contribute, or for which he was not responsible, then he can recover in this case so far as that matter goes. It is said, however, that he is responsible if anything happened after it was put in, notwithstanding that another person, also a puddler, working with him had charge of that heat. [Our view is, that if after he had placed this ball into the furnace and between that time and the time he left there was anything done or omitted to be done by him during the process of heating, he is liable and the defendant can make defense for that reason, notwithstanding that White was there and had charge of the heat; not because he was a tort feasor, but because he was there present and did not do, if anything he ought to have done or omitted to do, what he ought to have done, during the process of heating between the time of the plac-

ing of the ball in the furnace and the time that he left. You will consider whether he did anything, whether there is any evidence which shows that he was negligent, or that he did not do what he should have done during the time that that ball was in the furnace before he left, and you will consider that carefully. He is responsible for his acts of commission or his acts of omission, as well as his want of skill, provided these things were the causes which operated in the result and damage done to the defendant company. He left at or about six o'clock or whatever the exact time was because he says he was ill, and the nature of that illness was detailed to you. He is not responsible for what happened after he left, unless his leaving was a wilful and deliberate act. If it was done because he was indifferent and unmindful of his duty and injury resulted to the defendant company in consequence of such indifferent leaving, then he could not recover in this case, because he owes faithfulness in the discharge of his duty, and the absence or want of that faithfulness operates to a deprivation of the money which is due him.] [1] But if the injury was done at the time he left in consequence of anything he had done theretofore, whether by placing the ball in, or anything that he may have done while the ball was in the furnace, he is liable, provided those acts were the cause of the breakdown to the rolls. The product had to be put through a squeezer, and I do not recall that he was present when that part of the work was to be done. If he left unmindful of his duty and without cause, and in consequence of that unmindfulness in the discharge of his duty injury resulted to the defendant, he is responsible; otherwise we say to you he is not. [If he left for cause and the thing which produced the injury originated or was caused after the time he left, then he is not responsible and he has a right to recover in this case.] [2]

Defendant presented these points:

3. It having been admitted by the plaintiff that he put into the puddling furnace, as part of the charge, the scrap ball or iron in question, if the jury shall find that such act in connection with insufficient heating was the proximate cause of the breakdown, the putting of such scrap ball or iron into the furnace coupled with insufficient heating was negligence per se, and if they shall further find that the amount of damages resulting from such act or acts was greater than the claim of the plaintiff,

the verdict must be for the defendant.  *Answer :* This point is refused. [3]

4. The fact that the negligence or want of care of others may have contributed to the injury cannot be set up as a justification on the part of the plaintiff for his negligent act, and if the jury shall find that the injury to the defendant resulted from the want of care or negligence of the plaintiff, either by his own act or in conjunction with others, he is answerable for the wrongs done by himself as well as by his cotort feasors, and it appearing by the uncontradicted evidence that the damages resulting from such wrongful acts exceeds the amount of the claim in suit, the verdict must be for the defendant.  *Answer :* This point as it stands is refused. [4]

*Errors assigned* were (1–4) above instructions, quoting them.

*Robert Snodgrass*, with him *F. P. Snodgrass*, for appellant, cited : Glennon v. Lebanon Mfg. Co., 140 Pa. 594; Bard v. Yohn, 26 Pa. 482.

*Frank B. Wickersham*, with him *Oscar G. Wickersham*, for appellee, cited : McCully v. Clarke & Thaw, 40 Pa. 406.

OPINION BY BEAVER, J., April 16, 1901 :

We may assume that there was no negligence on the part of the plaintiff in placing the " scrap ball " in the puddling furnace from the improper heating of which, as alleged by the defendant, the accident, the results of which were set up as a defense to the plaintiff's claim for wages, occurred.  That fact was left to the jury by the court below, and to such submission no error is alleged.  The simple question, therefore, for consideration and the one which is raised by the several assignments of error is, did the plaintiff do negligently or omit to do anything which was dutiful on his part in connection with the heating of the said scrap ball?

The appellant alleges that the plaintiff, although not in charge of the heat, was responsible for the heating of the scrap ball and for the results which followed, the attempt to roll it after it had passed through the squeezer, in view of the fact that he had placed the ball in the furnace and, being a skilled

puddler, was bound to know the condition of the furnace and of the material which was undergoing preparation for the rolls therein, and this was the burden of the points for charge refused by the court below and assigned for error in the third and fourth assignments. The defendant leaves out of view entirely in these points, however, an important and practically controlling fact in the case, namely, that the plaintiff had been excused on account of sickness by the night boss who was in charge of the mill at the time and left the mill in consequence, before the heat was finished or the ball in question taken out of the furnace. On this question the plaintiff says, in answer to inquiries upon the subject: "Q. How did you come to go home that night? A. I got sick. Q. Before you left your work, was another man accepted by the company to take your place? A. Yes, sir. Q. Who was that man? A. George Malseed." Arms, the night boss in charge of the mill, says: "Q. What time did you go on duty on March 12? A. Six o'clock. Q. Whom did you relieve? A. Nelson. Q. Who is Mr. Nelson? A. Day boss. Q. Could you state whether Joseph Laverty was working when you went on duty? A. Yes, sir. Q. Did he speak to you? A. Yes, sir. Q. What application did he make, when you came on duty? A. Said he was sick and not able to work and asked me if I could get a man in his place. Q. What did you do in pursuance of that application? A. I looked around the mill and seen George Malseed and got him to work in his place. Q. What did you direct George Malseed to do? A. Take his place." As to this fact there is no contradiction and, if there had been, the court distinctly left it to the jury to say whether his leaving was a wilful and deliberate act." The verdict determines that it was not. The plaintiff being, therefore, relieved by the authorized agent of the defendant from any duty connected with the work subsequent to the time of his leaving, how could he be held responsible for what followed his leaving? The failure to incorporate this important fact in the points submitted justified the court in their refusal, even if they might have been considered, in other respects, entitled to an affirmance, as to which we do not intimate any opinion. This important fact is also left out of view in the defendant's argument. We fail to see how the defendant can hold the plaintiff responsible for the results of

the alleged failure in the discharge of his duty, from which he had been excused by the defendant's authorized agent.

Under the circumstances, we can see no error in the parts of the charge complained of, or in the answers to the points for charge which were refused. The specifications of error are, therefore, all overruled and the judgment affirmed.